IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CYNTHIA MCKNIGHT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:04-CV-116 |
| v. | § | |
| | § | |
| THE PURDUE PHARMA COMPANY; | § | JUDGE RON CLARK |
| PURDUE PHARMA LP; PURDUE | § | |
| PHARMA INC.; PURDUE FREDERICK | § | |
| COMPANY; PF LABORATORIES INC. | § | |
| | § | |
| *Defendants*. | § | |

**ORDER GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is the Purdue Defendants'[1] Motion for Summary Judgment [Doc. #89], which, among other defenses, asserts that Plaintiff's claims are barred by the statute of limitations.[2] After considering the statute of limitations defense, the court finds that Plaintiff Cynthia McKnight ("McKnight") had a duty to file her lawsuit within two years of ceasing to take OxyContin. Defendants motion is granted in part.

**I. Background**

McKnight stopped taking OxyContin on December 8, 2001 and reported that she stopped taking OxyContin to her pain specialist, Dr. Theesfeld, on December 10, 2001. McKnight associated numerous problems to OxyContin and, in general, reported that she just did not feel right while she was on it. Dr. Theesfeld testified that OxyContin worked well for McKnight, but that she

---

[1] The Purdue Defendants include The Purdue Pharma Company, Purdue Pharma LP, Purdue Pharma Inc., Purdue Frederick Company, and PF Laboratories Inc.

[2] Plaintiff, along with other plaintiffs across the country petitioned the Judicial Panel on Multidistrict Litigation to have all OxyContin cases consolidated into an MDL. The JPML denied the motion to consolidate October 18, 2005.

wanted to stop taking the drug because of the prejudice surrounding it in the newspaper and community. Ultimately, McKnight took herself off the drug. In her deposition, McKnight stated, in response to why she called Dr. Theesfled and took herself off OxyContin, "[i] thought it was too strong for me. I thought it was -- there was some problems with it." McKnight Depo. p. 243-44.

McKnight filed suit December 24, 2003 in the Southern District of Illinois. Judge G. Patrick Murphy transferred the case to the Eastern District of Texas on June 10, 2004.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)). In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over

a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Statute of Limitations Defense

**A. Choice of Law**

The choice of law is not disputed by the parties, and both sides agree on the applicability of the Illinois statute of limitations. Even though Plaintiff is from Texas, and the events surrounding her alleged injury occurred in Texas, the Illinois statute still applies. Under the *Erie* doctrine, federal courts exercising diversity jurisdiction apply the procedural law of the forum state to procedural issues. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). In addition, a federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. *Klaxon*

*Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020 (1941). However, if a case is transferred from another federal district court, the transferee forum must apply the choice of law rules of the transferor forum. *Ferens v. John Deere Co.*, 494 U.S. 516, 524-25, 110 S. Ct. 1274, 1280 (1990). Illinois courts view the statute of limitations as procedural, "merely fixing the time in which the remedy for a wrong may be sought, and [does] not alter substantive rights." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002); *see Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). Accordingly, this court, sitting as the transferee court, will make an "*Erie* guess" as to how Illinois courts would decide the statute of limitations issue.

**B. Illinois Statute of Limitations**

The Illinois statute of limitations governing personal injuries applies to the following causes of actions raised by Plaintiff: (1) strict products liability; (2) negligence; (3) malicious conduct; (4) fraud; (5) misrepresentation; and (6) suppression. 735 Ill. Comp. Stat. 5/13-202. Plaintiff's claim for breach of implied warranty of merchantability has a four year statute of limitations. 810 Ill. Comp. Stat. 5/2-725. In Illinois, "the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981); *see Wells v. Travis*, 672 N.E.2d 789, 792 (Ill. App. Ct. 1996). "At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell*, 421 N.E.2d at 874. While these cases are not the most recent, a review of Illinois treatises indicates they are still the bedrock for analysis of statute of limitations issues in Illinois. 33 Karl J. Oakes, *Ill. Jur.* § 125 (2005) (citing the companion case to *Witherell*, *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864 (1981)); 25 Richard Kane & Jan

Lehman, *Ill. Law and Prac. Limitations of Actions* § 131 (2005); 3 Richard A. Michael & Michael J. Kaufman, *IL Prac. Civil Proc. Before Trial* § 16.6 (2004) (citing *Witherell* and *West* in the context of medical malpractice). And, the Illinois Supreme Court is still citing the rule. *Morris v. Margulis*, 754 N.E.2d 314, 318 (2001).

The case of *Witherell* involved prescription birth control pills. *Witherell*, 421 N.E.2d at 870. The Illinois Supreme Court listed several relevant facts, in deciding plaintiff was barred by the statute of limitations test. First, one of plaintiff's doctors told her she had a blood clot. *Id.* at 871. Second, plaintiff had heard from her mother and other woman that birth control pills might cause blood clots. *Id.* Third, plaintiff had filed a "letter complaint" against the doctors in the county court. *Id.* Finally, the Court stated "[it is] inconceivable . . . that a reasonable person would not have realized, at least by the time of plaintiff's second hospitalization . . . that she may not have been receiving proper diagnosis and treatment. *Id.* at 874.

Since the court is making an "*Erie* guess," it is helpful to look at the Seventh Circuit Court of Appeals, which is presumably more familiar with Illinois law than any other Federal Court. The cases of *Curry v. A.H. Robbins Co.*, 775 F.2d 212, 216 (7th Cir. 1985) and *City Nat. Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 282-83 (7th Cir. 1994) both discuss the *Witherell* and *Nolan* standard or review. The product at issue in *Curry* was an intrauterine device ("IUD"), which is not a drug, but is a device prescribed by a doctor. The Court in *Curry*, citing the Illinois Supreme Court, stated that the inquiry is not when a plaintiff thinks they have a cause of action, but whether a reasonable person, with the symptoms complained of, might have thought they resulted from "actionable conduct." *Curry*, 775 F.2d at 216.

Based on these cases, this court must examine the undisputed facts that might have given McKnight information that there was an injury, and that it was wrongfully caused. The court must then determine if there is enough information that a reasonable person should have inquired further, to determine whether an actionable wrong was committed.

### 1. Statute of Limitations Defense Applied to McKnight

There are two issues relating to the statute of limitations defense. The first is whether McKnight knew or reasonably should have known she was injured. The second is whether McKnight knew or reasonably should have known her injury was wrongfully caused. The court recognizes that "[i]n many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact." *Witherell*, 421 N.E.2d at 874. However, "[w]here it is apparent from the undisputed facts . . . that only one conclusion can be drawn, the question becomes one for the court. *Id.*

It was clear McKnight knew she had a problem, even testifying that while she was taking OxyContin she was in bed most of the time, that she slept too much, and that she got mad at her husband. McKnight Depo. p. 183-84. McKnight complained of not being able to have sex. McKnight Depo. p. 187. She also complained of not being able to work outside the house. McKnight Depo. p. 188. McKnight testified that her constipation began after taking OxyContin. McKnight Depo. p. 188-98. Lastly, McKnight stated that her depression was different while on OxyContin. McKnight Depo. p. 195.

The expert report of Plaintiff's expert Dr. Norman S. Miller M.D. also provides insight into Plaintiff's condition. Dr. Miller reports that McKnight said that, during the time she took

OxyContin, she could not think straight, she heard voices, her blood pressure was high, she was scared and felt addicted, she was angry all the time, felt like a bad wife, had memory problems, and overall did not feel good. Def. Mot. for Summ. J., Exhibit 61 p. 4-7. Dr. Miller reports that her bad feelings started when she started taking OxyContin. Def. Mot. for Summ. J., Exhibit 61 p. 5.

McKnight stopped taking OxyContin on December 8, 2001 and reported that she stopped taking OxyContin to Dr. Theesfeld on December 10, 2001. Dr. Theefeld's nurse notes indicate that McKnight called on December 10, 2001. McKnight took herself off OxyContin because it was "too much medication for her, makes her drowsy." Def. Mot. for Summ J., Exhibit 39. The nurse put her back on Lorcet, until her next appointment with Dr. Theesfeld. Plaintiff testified to calling Dr. Theesfeld's office and telling him that she had stopped taking OxyContin. McKnight Depo. p. 201, 305.

Dr. Theesfeld testified that OxyContin worked well for McKnight, but that she wanted off the drug because of the prejudice surrounding it in the newspaper and community. Dr. Theesfeld Depo. p. 60. In her deposition, McKnight stated, in response to why she called Dr. Theesfled and took herself off OxyContin, "[i] thought it was too strong for me. I thought it was -- there was some problems with it." McKnight Depo. p. 243-44. McKnight further testified that "[t]he Lord told me I needed to stop the OxyContin." McKnight Depo. p. 245.

### IV. Conclusion

Under Illinois law, a person in these circumstances would be under an obligation to inquire further to determine whether an actionable wrong was committed. The court finds that inquiry should have begun no later than December 10, 2001. The Illinois legislature set a two year statute of limitations for all personal injury claims. Undoubtedly it could have been longer, but it is the

prerogative of the legislature, not the court, to make that decision.  Legislators have been aware of the *Witherell* and *Nolan* cases since 1981, without amending the statute, so they are obviously comfortable with them.  It is now this court's task to apply the statute as written by the Illinois General Assembly and interpreted by the Illinois Supreme Court.  In making an *Erie* guess as to how the Illinois Courts would decide the issue, the court finds that all McKnight's claims, except the breach of implied warranty claim are covered by the two year statute of limitations and are time barred.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment **[Doc. #89]** is **GRANTED in part**, as to Defendants' statute of limitations defense.  The following causes are action are dismissed: (1) strict products liability; (2) negligence; (3) malicious conduct; (4) fraud; (5) misrepresentation; and (6) suppression.  Plaintiff's remaining cause of action for breach of implied warranty of merchantability remains.

So **ORDERED** and **SIGNED** this **21** day of **November, 2005.**

_____
Ron Clark, United States District Judge